UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAWN D., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:19-cv-00350-DBH |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the October 2, 2018, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease, right side sacroiliitis, and obesity. (R. 15.) The ALJ also found that Plaintiff's left knee impairment and benign hypermobility syndrome were non-severe impairments. (*Id.*)

Based on her review of the record, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work, except Plaintiff can lift and carry 15 pounds occasionally and less than 10 pounds frequently; can stand and walk 4 hours and sit for 6 hours; can occasionally climb ramps and stairs; cannot climb ladders, ropes or scaffolds; can frequently balance; and occasionally can stoop and kneel, but cannot crouch or crawl. (R. 16.)

The ALJ found that Plaintiff is unable to perform any past relevant work as a massage therapist, waitress or bookkeeper. (R. 19.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the jobs of office helper, inspector and mail sorter. (R. 20-21.)

**STANDARD OF REVIEW**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind

might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred when she failed to find at step 2 that Plaintiff's left knee pain and benign hypermobility syndrome were non-severe impairments. Plaintiff further argues that the ALJ's RFC assessment was not supported by substantial evidence, that the ALJ did not properly assess Plaintiff's obesity, and that the vocational expert's testimony was not relevant.

**A. Step 2 Findings**

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an

3

impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. *See also* Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe." 20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec.*, 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

### 1. Left Knee Impairment

Plaintiff injured her left knee during a seven-mile hike on June 25, 2016. (R. 353-54.) She underwent surgery in September 2016 to repair a tear in the posterior horn of the lateral meniscus. (R. 399-402.) The ALJ found that Plaintiff's left knee impairment was not severe because it did not meet the 12-month durational requirement. (R. 15.) Plaintiff argues that her left knee condition caused a more than minimal effect on her ability to work for more than twelve months.

On March 20, 2017, less than 8 months after her injury, Plaintiff had a pain level in her left knee of 0 on a scale of 0-10, was weightbearing and not using any devices to assist with walking, and had a range of motion of 0 to 135 degrees. (R. 440.) At subsequent medical appointments in August and October 2017, Plaintiff did not disclose any deterioration in the condition of her left knee. (R. 455, 462.) In addition, Plaintiff testified that she had not had any further appointments with her orthopedic surgeon after October 2017. (R. 47.) Furthermore, in a physical RFC assessment dated July 25, 2017, Plaintiff's treating provider did not list Plaintiff's left knee impairment as one of the medical bases for Plaintiff's limitations. (*See* R. 44344.) In sum, given the record evidence, the ALJ supportably found that Plaintiff did not establish that her left knee impairment was of duration to be considered severe.

Even if the ALJ erred in the Step 2 finding, remand would not be warranted. Remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding

at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")). Although the ALJ determined that the left knee impairment was non-severe, the ALJ nevertheless accounted in Plaintiff's RFC for Plaintiff's testimony of continued pain and occasional swelling (which testimony was not supported by contemporaneous medical evidence), by limiting Plaintiff to less than the full range of light work. (R. 15.) Plaintiff has failed to identify any additional limitations resulting from the left knee impairment that should have been included in Plaintiff's RFC.

    2.    **Benign Hypermobility Syndrome**

In January 2017, Plaintiff was diagnosed with benign hypermobility syndrome. The ALJ noted that although the record includes evidence of hyperextension of the elbow and hypermobility of the lumbar spine, Plaintiff's overall reflex and neurological testing was normal. (R. 15.) The ALJ also found that a January 2017 rheumatology examination that led to the diagnosis further supported her finding that the condition would not cause more than minimal functional limitations. (*Id.*)

A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Plaintiff has not shown that the record evidence supports either a finding that Plaintiff's hypermobility syndrome is severe, or if it were severe, how it results in any functional limitations beyond

6

those assessed by the ALJ. *See, e.g., Carlton v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) ("It is [the Plaintiff's] burden to supply the medical evidence needed to establish her impairments and the degree to which they limit her functional capacity"); *see also Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) ("the important point here is that the plaintiff does not point to any evidence that there was any further limitation on her [functional] ability …, and the burden of proof rests with the claimant through the establishment of an RFC"). In other words, Plaintiff has not demonstrated that a severe impairment finding would result in any additional limitations on Plaintiff's work capacity. The ALJ's Step 2 finding, therefore, does not warrant remand.

**B.    RFC Finding**

The ALJ found that Plaintiff is capable of performing "light work … except [Plaintiff] can lift and carry 15 pounds occasionally and less than 10 pounds frequently; can stand and walk 4 hours and sit for 6 hours; … can occasionally climb ramps and stairs;" but "cannot climb ladders, ropes or scaffolds;" can "frequently balance; occasionally stoop and kneel and cannot crouch or crawl." (R. 16.) Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.

The ALJ acknowledged Plaintiff's testimony that she suffers from chronic pain and fatigue stemming from her physical impairments. (R. 17.) The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, however, were not entirely consistent with the medical record and other evidence. (*Id*.) For example, the ALJ noted that Plaintiff reported daily activities that are inconsistent with

7

the level of impairment she alleges, which activities included household chores such as preparing simple meals, washing dishes and doing laundry, walking daily, and traveling. (*Id*.)

The ALJ further noted that the overall treatment records do not support restrictions beyond the assessed RFC, citing the treatment providers' conservative treatment to address Plaintiff's symptoms, including lumbar and sacroiliac injections with pain relief and physical therapy (R. 18); a June 2018, MRI of Plaintiff's lumbar spine that revealed mild to moderate disc pathology with no significant central canal stenosis or neural foraminal narrowing at any level (*Id*.); numerous physical examinations with normal findings, such as full range of motion in the back and lower extremities, near-full lower extremity strength, and normal reflexes (*Id*.); and frequent clinical observations that characterized Plaintiff as being in no acute distress (*Id*.).

Plaintiff contends that the ALJ's RFC assessment is impermissibly based upon her lay assessment. In general, an ALJ may not substitute her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. The ALJ's assessment, however, is supported by expert evidence.

The ALJ gave "partial weight" to the opinions of Plaintiff's treating provider Diane James, FNP, who provided two physical RFC assessments of Plaintiff dated July 25, 2017 and June 27, 2018. (R. 18.) The ALJ found Ms. James' opinions that Plaintiff could stand, walk and sit for 10 minutes before shifting positions, and could occasionally twist, stoop and climb stairs and never crouch or climb ladders, as "generally consistent with the record

8

and support[ive of] the restriction to less than the full range of light work ….." (*Id.*) The ALJ gave the remaining portions of Ms. James' RFC assessments "no weight," however, because the ALJ found that they were "inconsistent with the evidence of record …." (*Id.*)

A "treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Gilson v. Colvin*, No. 1:12-cv-376-GZS, 2013 WL 5674359, at *2 (D. Me., Oct. 17, 2013) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). An ALJ is not required to consider a treating physician's opinion controlling, however. *See Bowker v. Comm'r, Soc. Sec. Admin.*, No. 2:13-cv-122-DBH, 2014 WL 220733, *3 (Jan. 21, 2014) (fact that some of treating physician's opinions were inconsistent with other medical evidence in the record "deprives them of controlling weight").

The question of a claimant's RFC is, moreover, "among the issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no 'special significance' and cannot be assigned controlling weight." *Gilson* at *2 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). An ALJ "may piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). The ALJ did not have to adopt the entirety of Ms. James's physical RFC assessment "so long as she supplied 'good reasons' for doing so." *Vining v. Astrue*, 720 F. Supp. 2d 126, 134 (D. Me. 2010) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). In her decision, the ALJ considered, but

partially discounted, Ms. James's physical RFC because she found that, aside from Plaintiff's subjective reports, there was minimal objective evidence in the record to support the additional restrictions in reaching, sitting, standing and walking that Ms. James advocated. (R. 18.) The ALJ noted that Plaintiff "herself testified she can sit between 20 and 30 minutes, can walk for 30 minutes and can stand for 15 minutes." (*Id.*; *see also* R. 55-56, 58.)

The ALJ also gave "limited weight" to the opinions of agency physicians Dr. J. H. Hall and Dr. Benjamin Weinberg, who assessed Plaintiff as capable of medium work. (R. 19.) The ALJ found that the preponderance of the evidence warranted a more restrictive assessment, and she gave their opinions less weight than Ms. James's opinions, finding that Ms. James's assessments were "more consistent with the overall weight of the evidence …." (*Id.*)

The ALJ's analysis of the various medical opinions and medical evidence includes "good reasons" for not adopting Ms. James's assessment in its entirety. No further analysis by the ALJ is required. In sum, the evidence of Plaintiff's activity level, the medical record, and the medical opinion evidence include substantial evidence to support the ALJ's RFC finding.

C. **Obesity**

Plaintiff argues that the ALJ did not properly assess her obesity, which the ALJ found to be a severe impairment. (R. 15.) In her assessment of Plaintiff's RFC, the ALJ discussed Plaintiff's obesity as follows:

> Additionally, the claimant is obese. Since the alleged onset date, the claimant

has weighed between 225 to 251.00 pounds with a corresponding body mass index from 36.9 to 41.8 respectively…. While the claimant's obesity likely aggravates her symptoms, particularly with respect to her back pain, there is no evidence consistent with limitations beyond the residual functional capacity. I will, therefore, consider the effects of the claimant's obesity in combination with her other severe impairments.

(R.18 (citations omitted).)[2]

Defendant's administrative rulings include a commitment to evaluate the limiting impact that obesity has on social security claimants. *See* SSR 02–1p, *Titles II and XVI: Evaluation of Obesity* (Sept. 12, 2002). The Ruling recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." 2002 WL 34686281, at *3. The Ruling provides that obesity will be considered in connection with the sequential evaluation process at step 2 and step 3, and as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity in connection with step 4 and step 5. *Id.* The standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Consideration of obesity is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached

---

[2] It should be noted that Plaintiff's own medical expert, Ms. James, answered "No" to the question on her physical residual functional capacity assessment, dated June 27, 2018, asking whether Plaintiff suffers from "obesity that negatively impacts physical functioning (for example, does the obesity cause more severe or additional limitations than one would typically see from the patient's impairment(s) alone)?" (R. 642.)

11

our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

Plaintiff contends the ALJ's analysis was "void of any discussion as to what impact obesity had on the RFC" in contravention of this District's precedent. (Statement of Errors at 16, ECF No. 13.) The ALJ found that Plaintiff's obesity aggravates her symptoms, particularly her back pain, but that the obesity does not result in any limitations in addition to the limitations in the RFC. Contrary to Plaintiff's argument, the ALJ described the effect of Plaintiff's obesity (i.e., aggravates the symptoms caused by other conditions) and specifically found that the obesity did not cause any limitations beyond those included in the RFC. That is, the ALJ found that the functional limitations caused by the aggravation of Plaintiff's symptoms were addressed by the RFC.[3] In short, the ALJ's consideration of the effect of Plaintiff's obesity on Plaintiff's functional capacity was adequate under SSR 02-1.

## D. The Vocational Expert's Testimony

Plaintiff challenges the testimony of the vocational expert. Because Plaintiff's challenge depends on the Court finding that the ALJ's step 2 and RFC findings are

---

[3] Plaintiff cites to *Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375 (D. Me. Dec. 30, 2010), and *Fothergil v. Astrue*, No. 2:11-cv-247-DBH, 2012 WL 1098444 (D. Me. Mar. 29, 2012), to support her argument that the ALJ failed to address obesity adequately. Both cases are distinguishable, however. In *Kaylor*, the ALJ failed to identify any functional effects of the plaintiff's obesity, which the Court found necessitated reversal and remand. 2010 WL 5776375, at *3. Similarly, in *Fothergil*, the ALJ did not explain how the plaintiff's obesity affected the plaintiff's functioning. 2012 WL 1098444, at*3-*4. Here, however, the ALJ directly addressed Plaintiff's obesity as likely to aggravate her back pain but noted that there was no evidence that it caused any limitations beyond her residual functional capacity. The ALJ's assessment was consistent with the assessment in *Keith C. v. Soc. Sec. Admin. Comm'r*, No. 2:17-cv-00436-NT, 2018 WL 4094848, at *4 (D. Me. Aug. 28, 2018) in which the Court found no error when the ALJ found "no indication that obesity exacerbates the claimant's conditions beyond the extent discussed" or was "otherwise disabling."

erroneous, given the above analysis, Plaintiff's argument must fail.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of March, 2020.